# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SHANE ANTHONY BROWNING,

               Petitioner,                  Case Number: 2:10-13818

v.                                   HONORABLE GERALD E. ROSEN

PAUL D. KLEE,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner, Shane Anthony Browning, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, challenges his convictions for first-degree murder and being a third habitual offender. Respondent argues that the petition should be denied because the claims are unexhausted, procedurally defaulted and/or meritless. For the reasons discussed, the Court denies the petition.

## I.     Background

Petitioner's convictions arise from the stabbing death of Deandre Hudson, on January 5, 2007, in Lansing, Michigan. The prosecutor presented evidence that the murder arose from a dispute over drugs between Petitioner's friend James Edwards and Hudson.

Edwards testified that he and Petitioner used drugs together and that, each week, he purchased approximately $700 to $900 worth of cocaine from Petitioner. Edwards also purchased approximately $50 worth of crack cocaine from Hudson daily. On January 5, 2007,

Edwards went with Petitioner to Hudson's home to purchase drugs. He returned later in the day with Petitioner and Basim Alsaedi to pay Hudson for the crack. Petitioner drove Edwards and Alsaedi to Hudson's house. Hudson met Edwards outside the home. Hudson claimed that Edwards owed him $200 rather than the $50 Edwards believed he owed. The two men began arguing. Petitioner exited his vehicle and joined in the argument. Edwards started to walk toward the car. He turned and saw Petitioner punching Hudson, both while Hudson was standing and then while he was on the ground. Petitioner then ran to the car and sped away.

Once in the vehicle, Petitioner showed Edwards a steak knife, covered with blood. Alsaedi wiped the knife clean and threw it out the car window. Alsaedi also burned Petitioner's clothes in the fireplace at Edwards' parents' home and discarded Petitioner's shoes in a dumpster.

Police recovered a knife several blocks away from where Alsaedi said he had thrown the knife. Alsaedi told police it was not the knife he had thrown from the vehicle. Police Officer Jeff Hudak found no fingerprints or bloodstains on the knife.

Petitioner did not testify in his own defense.

2

## II.    Procedural History

Petitioner was convicted by a jury in Ingham County Circuit Court of first-degree premeditated murder and being a third habitual offender.  On November 28, 2007, he was sentenced to life in prison without possibility of parole.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims through counsel and in a pro per supplemental brief:

I.      Whether the trial court erred in allowing prior acts evidence under M.R.E. 404(b) relating to a prior act by Petitioner using violence to collect a drug debt.

II.     Whether the prosecutor committed misconduct by disposing of a knife discovered by police on the street after the murder.

III.    Whether Petitioner was entitled to an adverse inference instruction based on the missing knife.

IV.     Whether trial counsel was ineffective for failing to investigate and produce witness Rufus Robertson.

V.      Whether the admission of "drug profile/dealer" evidence "at the 11th hour" deprived Petitioner of a fair trial.

VI.     Whether witness Kenneth Brown committed perjury by testifying that he did not receive consideration for testifying against Petitioner.

VII.    Whether the prosecutor committed misconduct by introducing a picture of Petitioner handcuffed to a chair.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Browning*, No. 282689, 2009 WL 1397149 (Mich. Ct. App. May 19, 2009).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court.  He raised the same claims raised in the Michigan Court of Appeals, and these additional claims:

I.      Whether the introduction of prior bad acts evidence under M.R.E. 404(b) deprived Petitioner of a fair trial.

3

II.     Whether the prior bad acts introduced under M.R.E. 404(b) were relevant, given the factual differences between the charged offense and the prior offense.

III.    Whether appellate counsel was ineffective for failing to raise the claims presented by Petitioner in his Standard 4 Supplemental Brief.

The Michigan Supreme Court denied leave to appeal, *People v. Browning*, 485 Mich. 928 (Oct. 26, 2009), and denied a motion for reconsideration. *People v. Browning*, 485 Mich. 1073 (Jan. 29, 2010).

Petitioner then filed this habeas corpus petition. He raises these claims:

I.      Whether witness Kenneth Brown committed perjury by testifying that he did not receive consideration for testifying against Petitioner.

II.     Whether trial counsel was ineffective for failing to investigate and produce witness Rufus Robertson.

III.    Whether the trial court erred in allowing the prosecutor to introduce prior bad acts testimony under M.R.E. 404(b).

IV.     Whether the introduction of prior bad acts evidence under M.R.E. 404(b) deprived Petitioner of a fair trial.

V.      Whether the prior bad acts introduced under M.R.E. 404(b) were relevant, given the factual differences between the charged offense and the prior offense.

VI.     Whether the prosecutor committed misconduct by introducing a picture of Petitioner handcuffed to a chair.

VII.    Whether the admission of "drug profile/dealer" evidence "at the 11th hour" deprived Petitioner of a fair trial.

VIII.   Whether the prosecutor committed misconduct by disposing of a knife discovered by police on the street after the murder.

IX.     Whether Petitioner was entitled to an adverse inference instruction based on the missing knife.

X.      Whether appellate counsel was ineffective for failing to raise the claims presented by Petitioner in his Standard 4 Supplemental Brief.

4

### III.  Standard

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of

facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the

writ if the state court identifies the correct governing legal principle from [the Supreme] Court

but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539

U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).  However, "[i]n order for a federal

court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state

court's decision must have been more than incorrect or erroneous.  The state court's application

must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted);

*see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with

clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.    Petitioner's Motions

On September 12, 2012, the Court issued an order denying Petitioner's request for leave to conduct discovery.  Now before the Court is Petitioner's motion for reconsideration of that order.

Motions for reconsideration may be granted when the moving party shows (1) a "palpable defect," (2) by which the court and the parties were misled, and (3) the correction of which will result in a different disposition of the case.  E.D. Mich. L.R. 7.1(h)(3).  A "palpable defect" is a "defect which is obvious, clear, unmistakable, manifest or plain."  *Olson v. The Home Depot*, 321 F. Supp. 2d 872, 874 (E.D. Mich. 2004).  Petitioner's arguments in support of reconsideration amount to nothing more than a disagreement with the Court's decision.  They do not show that the decision was based upon any error or palpable defect.  Petitioner asks, in the alternative, for the Court to stay the proceedings should the Court find any of Petitioner's claims unexhausted.  The Court addresses the merits of each of Petitioner's claims herein and finds them all to be meritless.  The Court, therefore, will not stay the petition.

Also before the court is Petitioner's motion to expand the record, conduct additional discovery, and appoint counsel.  Petitioner seeks to expand the record to include documents attached to his motion.  Although the documents are of marginal relevance and some are already part of the record, the Court will allow Petitioner to expand the record to include these documents.  Petitioner seeks additional discovery.  For the reasons stated in the Court's 9/12/12 Order, the Court denies Petitioner's request.

Finally, Petitioner seeks appointment of counsel.  Petitioner has no absolute right to be

represented by counsel on federal habeas corpus review.  *See Abdur-Rahman v. Michigan Dept. of Corrections*, 65 F.3d 489, 492 (6th Cir. 1995); *see also Wright v. West*, 505 U.S. 277, 293 (1992) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).  A habeas petitioner may obtain representation at any stage of the case "[w]henever the United States magistrate or the court determines that the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).  The Court determines that the interests of justice do not require appointment of counsel.

**V.     Discussion**

**A.     False Testimony Claim**

In his first habeas claim, Petitioner argues that the prosecutor knowingly presented false testimony from Kenneth T. Brown.  Brown, a jailhouse barber, testified that Petitioner admitted to him to being involved in a robbery and fight that had gone bad.  Brown testified that he did not receive any consideration for his testimony.  On direct examination, Brown testified that any reduction in sentence he received was in exchange for his work as a barber.  On cross-examination, defense counsel showed Brown a stipulation and order to modify sentence which granted Brown a 1/4 time reduction for cooperating with authorities and for his general good conduct and attitude.  The stipulation was dated approximately two months before Petitioner's trial.  Brown stated that he received a sentence reduction for being a prison trustee.  He denied the reduction was related to his testimony in Petitioner's case.  Petitioner argues that Brown's testimony that he received no consideration for testifying against Petitioner was false and that the prosecutor knew that it was false.

A false-testimony claim falls under the *Brady* disclosure doctrine, which requires the government to disclose evidence favorable to a defendant if it is "material either to guilt or to

punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194 (1963).  The "contours of [a false-testimony] claim were predominantly shaped by two Supreme Court cases: *Napue v. Illinois*, 360 U.S. at 269–72, 79 S.Ct. 1173, and *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)."  *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010).

The Sixth Circuit has developed a three-part test for determining if the prosecution has committed a *Brady–Napue–Giglio* violation:

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew  it was false.  The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Id.* at 894-95, *quoting Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998).

A false statement is material under this standard, and "[a] new trial is required[,] if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154, *quoting Napue*, 360 U.S. at 271.

The Michigan Court of Appeals held that Petitioner failed to establish that Brown's testimony was false:

> At trial, Brown admitted he received a reduction in his sentence, but stated that the reduction was because of his trustee status, not because of his testimony in this case. Brown received the sentence reduction before he testified at defendant's trial.  Because defendant has not established that Brown's testimony was false, there is no basis for concluding that the prosecutor had a duty to correct his testimony.

*Browning*, 2009 WL 1397149 at *4.

Petitioner has not shown that Brown received any consideration for his testimony.

9

Petitioner had an opportunity to cross-examine Brown regarding the stipulation to modify Brown's sentence. Brown attributed the reduction to his trustee status. Petitioner simply has not shown that testimony to be false. Thus, the Michigan Court of Appeals' finding that the prosecution did not present false evidence in this regard was reasonable.

### B.    Witness Rufus Robertson

Petitioner next argues that he was denied a fair trial by the prosecutor's failure to produce a *res gestae* witness, Rufus Robertson. He also claims that his trial attorney was ineffective in failing to compel Robertson's production or request a missing witness instruction.

Under Michigan law, a *res gestae* witness is "one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense." *People v. Hadley*, 242 N.W.2d 32, 34 (1976). "Michigan's requirement that prosecutors produce *res gestae* witnesses is a matter of state law, and its enforcement is outside the scope of [federal habeas] review." *Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. March 30, 2011). Accordingly, Petitioner is not entitled to habeas corpus relief with respect to this claim.

Petitioner also claims that his attorney was ineffective in failing to compel Robertson's production or, in the alternative, request a missing witness instruction. To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that

10

counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  A court's review of counsel's performance must be "highly deferential." *Id.* at 689.

Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).  "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, __ U.S. __, 131 S. Ct. at 788.

The Michigan Court of Appeals held that counsel was not ineffective in failing to compel Robertson's production or request a limiting instruction because Petitioner failed to show how he would have benefitted from Robertson's testimony.  He made no offer of proof as to what Robertson's trial testimony would have been.  Police interviewed Robertson the day after the murder.  Robertson told police that, just after Hudson had been stabbed, Hudson came to the door of the home where Robertson was staying, slumped in the doorway, and said he had been

11

stabbed.  Hudson looked to the street and saw a white man jump into the front passenger seat of

a silver Chevrolet Blazer and speed away quickly.  Robertson's testimony about what the man

was wearing was inconsistent with the red fleece jacket Edwards and Alsaedi testified Petitioner

was wearing.  Nevertheless, there is no reasonable possibility that if Robertson had testified the

result of the proceeding would have been different.  Several witnesses testified that the gunman

fled the scene in a Chevrolet Trailblazer, therefore, Robertson's testimony would not have

assisted Petitioner's defense in that regard.  Second, the evidence identifying Petitioner as the

shooter was weighty.  Accordingly, the Court finds reasonable the Michigan Court of Appeals'

decision finding no ineffective assistance of counsel.

      **C.**      **Other Act Evidence**

      Petitioner's third, fourth, and fifth habeas claims challenge the admission of evidence

related to Petitioner's aggressive collection of a drug debt earlier in the evening on the night of

the murder.  His seventh claim alleges that he did not receive proper notice of the prosecutor's

intent to introduce evidence of prior drug transactions between Petitioner and Edwards.  The

Michigan Court of Appeals held that the evidence of Petitioner's collection of a drug debt earlier

in the evening reflected his angry and confrontational mind set, helped to explain why Petitioner

would attack the victim without provocation and established Petitioner's familiarity with drug

debt collection.  In addition, the state court held that, while the prosecutor filed her written notice

of intent on the first day of trial, she spoke to defense counsel about her intent to introduce this

evidence several weeks prior.  Therefore, the state court held, Petitioner could not argue that he

was unfairly surprised by the admission of this evidence.

      The United States Supreme Court has declined to hold that the admission of similar

"other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53, 110 S. Ct. 668, 674-75 (1990). Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513. Petitioner's challenge to the admission of this evidence, therefore, does not warrant habeas relief.

> **D.     Admission of Photograph of Petitioner in Handcuffs**

Petitioner next argues that his attorney was ineffective in failing to object to the admission of a photograph of Petitioner in handcuffs. The photograph was admitted because the officer who arrested Petitioner testified that he could identify Petitioner based upon the clothing he was wearing at the time of this arrest.

As discussed above, to establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Although the Supreme Court in *Strickland* discussed the performance prong of an ineffectiveness claim before the prejudice prong, the Court made clear that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing

13

on one." *Strickland*, 466 U.S. at 697. The Supreme Court instructed that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* In the case at bar, the Court concludes that it is easier to address the prejudice prong first.

Petitioner fails to show any prejudice from admission of the photograph. The jury heard testimony that Petitioner had been arrested, they knew the photograph was taken right after Petitioner was arrested. It would not have been surprising to the jury that Petitioner was handcuffed when he was arrested. Most jurors would expect a murder suspect to, at least initially, be placed in some sort of restraint. Moreover, the manner in which the photograph was presented, to aid the police officer in the identification of Petitioner, was not prejudicial. The Court finds that Petitioner was not prejudiced by his attorney's failure to object to admission of this photograph.

### E.      Destruction of Evidence

Next, Petitioner argues that the prosecutor committed misconduct by disposing of a knife discovered by police on the street after the murder. The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, *see Trombetta*, 467 U.S. at 489, versus cases where 'potentially useful' evidence is not accessible. *See Arizona v. Youngblood*, 488 U.S. 51, 58 109 S. Ct. 333, 102 L. Ed.2d 281 (1988)." *United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir.

14

2001).  A defendant's due process rights are violated where material exculpatory evidence is not preserved.  *Trombetta*, 467 U.S. at 489.  For evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  *Id.* at 488-89.  The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith. *See id.* at 488; *Youngblood*, 488 U.S. at 57.

However, "the Due Process Clause requires a different result when . . . deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 56.  "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  *Id.* at 58.  A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence.  *See Malcum v. Burt*, 276 F.Supp.2d 664, 683 (E.D. Mich. 2003).  In short, to prevail on a destruction-of-evidence claim, a defendant needs to show that the evidence was exculpatory or that the police acted in bad faith.  *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004).

The Michigan Court of Appeals correctly reviewed Petitioner's claim under the standard applicable to potentially exculpatory evidence and held that the police did not act in bad faith. The state court reasoned:

> Alsaedi testified that after the offense, he threw the knife that defendant used to kill Hudson outside a car window.  The police later recovered a knife from the ground, but it was not found in the same area where Alsaedi said he discarded the knife used by defendant.  The recovered knife was shown to Alsaedi who stated it

15

was not the weapon he discarded.  Nevertheless, the police submitted the knife for examination. Testing revealed no evidence of blood or fingerprints, and there was a layer of dirt or dust that led the analyzer to believe that the knife had been in its discovered location for some time.

Because the recovered weapon was not found at the same location where the knife allegedly used to commit the offense was reported to have been discarded, the witness who discarded the knife informed the police that the recovered knife was not the same weapon, and testing of the recovered knife indicated that it did not contain anything of evidentiary value, but rather contained a layer of dirt suggesting that it had been at its discovered location for some time, there is no basis for concluding that the police acted in bad faith in failing to preserve this evidence. Thus, defendant has failed to show a due process violation.

*Browning*, 2009 WL 1397149 at * 2.

The Michigan Court of Appeals' decision is a reasonable application of *Youngblood*. The weapon was found several blocks from where Alsaedi said he had discarded it.  The condition of the knife indicated that it had been lying at that location for a long period of time. Moreover, the forensic testing revealed no blood or fingerprints.  Based upon this information, police concluded the knife was unrelated to the murder and therefore discarded it.  No evidence in the record establishes that the police had any reason to believe the knife contained even *potentially* exculpatory evidence.  "Where there is no indication that there was anything exculpatory about destroyed evidence, due process has not been violated."  *United States v. Jobson*, 102 F.3d 214, 219 (6th Cir. 1996) (internal quotation omitted).  Moreover, Petitioner has not shown that the police acted in bad faith in failing to preserve the evidence.  Accordingly, the Court concludes that the state court's decision is neither contrary to nor an unreasonable application of Supreme Court precedent.

### F.    Adverse Inference Instruction

Petitioner also argues that the trial court erred in denying his request for an adverse

16

inference instruction regarding the destruction of the knife.  An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'"  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (*quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right.'"  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  *Estelle*, 502 U.S. at 72 (*quoting Cupp*, 414 U.S. at 147).

Under Michigan law, an adverse inference instruction based on police destruction of evidence is appropriate only when the police acted in bad faith.  *Bailey v. Smith*, 492 F. App'x 619 (6th Cir. July 24, 2012); *People v. Davis*, 199 Mich. App. 515 (Mich. Ct. App. 1993).  Here, the Michigan Court of Appeals held that, because no bad faith was shown, the trial court was correct in denying the requested adverse inference instruction.  Petitioner has not shown that the finding that police did not act in bad faith was unreasonable or clearly erroneous and has failed to show that the absence of an adverse inference instruction so infected the entire trial as to violate due process.

### G.    Ineffective Assistance of Appellate Counsel Claim

Finally, Petitioner argues that appellate counsel was ineffective in failing to raise the claims raised in his pro per supplemental brief.  The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel.  *Evitts v. Lucey*, 469 U.S. 3 87, 396 (1985).  To prevail on a claim of ineffective assistance of appellate counsel, the petitioner

17

must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687.

The Supreme Court has made clear that a criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (*quoting Jones*, 463 U.S. at 751–52). Appellate counsel thus need not raise every nonfrivolous issue, but he or she must exercise reasonable professional judgment. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (*citing Jones*, 463 U.S. at 751–53).

Petitioner argues that appellate counsel was ineffective by failing to raise the claims raised in Petitioner's pro per supplemental brief filed in the Michigan Court of Appeals. Those issues have no merit. Appellate counsel need not raise non-meritorious claims on appeal. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (*citing Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Accordingly, the Court will deny habeas corpus relief on this claim.

## VI. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

18

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

**VII.   Conclusion**

Accordingly, **IT IS ORDERED** that Petitioner's Motion for Reconsideration (dkt. # 31) is **DENIED** and Petitioner's Motion to Expand the Record, Conduct Additional Discovery, and Appoint Counsel (dkt. #34) is **GRANTED IN PART AND DENIED IN PART**. It is granted in that the record is expanded to include the documents attached to Petitioner's motion and denied in all other respects.

**IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**


Dated: March 22, 2013          s/Gerald E. Rosen_____
                               Chief Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 22, 2013, by electronic and/or ordinary mail.

                               s/Julie Owens_____
                               Case Manager, (313) 234-5135

19